# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DECAPOLIS SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EPIC SYSTEMS CORPORATION,<br><br>Defendant. | Case No. 6:21-cv-00434-ADA<br><br>**Jury Trial Demanded** |

**DEFENDANT EPIC SYSTEMS CORPORATION'S MOTION TO DISMISS FOR IMPROPER VENUE OR TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WISCONSIN**

I.  **INTRODUCTION**

Defendant Epic Systems Corporation ("Epic") respectfully requests that the Court dismiss this case under FRCP 12(b)(3) because venue is improper under 28 U.S.C. § 1400(b).  Venue is proper only if Epic, a Wisconsin company, has a "regular and established place of business" in the Western District of Texas.  It does not.  Epic is incorporated in Wisconsin and maintains its headquarters in Verona, Wisconsin, which is in the Western District of Wisconsin.  Epic has no established, physical place of business in the Western District of Texas.  Any allegations to the contrary in Plaintiff's Complaint are mistaken.  Because venue is improper in this District, the case must either be dismissed or transferred to the Western District of Wisconsin.

In the alternative, if the court finds venue proper, this case should nonetheless be transferred to the Western District of Wisconsin under 28 U.S.C. § 1404(a) because transfer is more convenient for the parties and in the interest of justice.  All of Epic's evidence and witnesses relevant to the case are located in Wisconsin, and no particular connection exists between this District and this case other than Plaintiff's decision to file here.

II.  **BACKGROUND**

On April 29, 2021, Plaintiff Decapolis Systems, LLC filed suit against Epic alleging infringement of U.S. Patent Nos. 7,464,040 and 7,490,048 by Epic's electronic health record software and services.  Compl. ¶¶ 31–72.  Plaintiff is incorporated in Florida and maintains its principal place of business in Florida.  Compl. ¶ 1.  Epic is incorporated in Wisconsin, and its principal place of business/headquarters is located in Verona, Wisconsin.  Compl. ¶ 2; Peterson Decl. ¶ 2.  Epic does not have, nor has it ever had, brick-and-mortar locations in Texas.  Peterson Decl. ¶ 4.

The vast majority of Epic's employees work at Epic's headquarters in Verona, Wisconsin. Peterson Decl. ¶ 3.  Approximately 9,350 of Epic's 9,425 employees work on its campus in

Verona, WI. *Id.* The design, development, and testing of Epic's software platforms occur predominantly in Verona along with a handful of employees performing those tasks in Rochester, Minnesota. *Id.* ¶ 10. Accordingly, the vast majority of Epic's documents and records are maintained in Verona, including business files and records pertaining to the design, development, marketing, and technical support of Epic's software. *Id.* ¶ 11.

Although Epic has posted job openings that reference Austin, Texas (Compl. ¶ 6), Epic merely seeks to attract talent in technology-rich areas such as Austin and other locations because those candidates may not search for job opportunities in Wisconsin. Peterson Decl. ¶ 5. But those job descriptions *specifically* state that the jobs require "[r]elocation to Madison, WI area."[1] *Id.*; Ex. 1.[2]

At the time of the filing of the Complaint, Epic had five employees living in Texas, and only two of those employees were living in this District. One employee is temporarily working remotely from his home; the other employee works in Verona, Wisconsin and commutes back and forth to Austin. Peterson Decl. ¶ 6-7. Epic does not own, rent, or lease space for any employee; does not store any inventory or other materials at these employees' residences; and does not require that the employees reside in this District or in the state of Texas more generally as a condition of performing their job duties. *Id.* ¶¶ 7-8. Of the remaining three employees who reside in Texas, but not in this District, all three temporarily work remotely from their homes. *Id.* ¶ 9.

### III.   LEGAL STANDARDS

Courts may dismiss a case for improper venue. Fed. R. Civ. P 12(b)(3). In ruling on a motion to dismiss for improper venue, "[t]he Court may consider evidence in the record beyond

---

[1] Verona is located approximately 12 miles southwest of Madison, Wisconsin.
[2] Exhibit 1 is attached to the Declaration of Jennifer Peterson filed concurrently herewith.

the facts alleged in the complaint and its admissible attachments." *Koss Corp. v. Skullcandy, Inc.*, No. 6-20-CV-00664-ADA, 2021 WL 1226557, at *1 (W.D. Tex. Mar. 31, 2021). Similarly, 28 U.S.C. § 1406(a) provides for dismissal or transfer where venue is improper: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Courts have discretion to dismiss or transfer under Section 1406(a), and may consider whether transfer is more convenient and economical for litigants and witnesses. *Bell v. Moawad Grp., LLC*, No. A-17-CA-00073-SS, 2017 WL 2841679, at *8 (W.D. Tex. June 30, 2017); *see also Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *2 (W.D. Tex. May 17, 2021) ("If venue is improper, the court must dismiss the case or transfer it to a venue in which the case could have been filed.").

## IV.  ARGUMENT

**A.  This Case Should Be Dismissed or Transferred Because Venue Is Improper.**

In patent cases, venue is proper in the judicial district where either: (1) the defendant resides; or (2) the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). The plaintiff carries the burden of establishing proper venue under one of Section 1400(b)'s two prongs. *Interactive Toybox, LLC v. Walt Disney Co.*, No. 1:17-CV-1137-RP, 2018 WL 5284625, at *1 (W.D. Tex. Oct. 24, 2018); *see also Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).[3] Neither prong is satisfied here.

---

[3] Federal Circuit law governs the Section 1400(b) analysis because this is a "matter[] unique to patent law." *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). But Fifth Circuit law governs the Section 1404(a) analysis. *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020).

3

### 1. Epic Does Not Reside in This District.

The Supreme Court in *TC Heartland v. Kraft Foods Grp. Brands LLC* held that residence for a domestic corporation in § 1400(b) refers only to the state of incorporation. 137 S. Ct. 1514, 1521 (2017). The Federal Circuit further clarified that if a corporate defendant maintains a principal place of business in the same state in which it is incorporated, the judicial district where the principal place of business is located would be the proper venue under Section 1400(b). *See In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018). Because Epic is incorporated in Wisconsin, and it maintains its principal place of business in Verona, Wisconsin, Epic resides in the Western District of Wisconsin, and not this District.

### 2. Epic Does Not Have a Regular and Established Place of Business in This District.

The Federal Circuit has held that there are three requirements relevant to determining whether a corporate defendant has a regular and established place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1360. "[T]he regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c)." *Id.* at 1361.

As to the first requirement—physical place—"the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,'" but "there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). As to the second requirement, the location "must for a meaningful time period be stable, established." *Id.* at 1363. And as to the third requirement, "the defendant must establish or ratify the place of business"; "[i]t is not enough that

4

the employee does so on his or her own." *Id.* at 1363. "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.*

Epic does not have a regular and established place of business in the Western District of Texas. Contrary to the allegations in the Complaint, Epic does not have, nor has it ever had, brick-and-mortar locations in Texas. *Compare* Compl. ¶ 6, *with* Peterson Decl. ¶ 4. Epic's only U.S. brick-and-mortar locations are in Verona, Wisconsin and Rochester, Minnesota. Peterson Decl. ¶ 4.

Plaintiff relies on Epic LinkedIn job postings to support its averments that Epic has a place of business in the district based on the mention of Austin, Texas (Compl. ¶ 6), but it is mistaken. In order to reach talent that may not otherwise search for jobs near Madison, Wisconsin, Epic targets potential applicants in areas where desirable employees are located—such as Austin, Texas and other locations around the U.S. Peterson Decl. ¶ 5. But the postings specifically explain that the jobs require "[r]elocation to Madison, WI area." *Id.*; Ex. 1. Epic does not engage in business from a physical location in Austin, and these job posting cannot substantiate such a claim. Indeed, the Federal Circuit noted in *Cray* that "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." 871 F.3d at 1364. Epic's job postings targeting Austin-area candidates are insufficient to support Plaintiff's venue contention.

Moreover, Plaintiff cannot merely allege that Epic "maintains a regular and established business presence in this District" and expect its averment to be taken as true. Compl. ¶ 7; *see Westech Aerosol Corp.*, 927 F.3d at 1382 ("Simply stating that 3M has a regular and established place of business within the judicial district, without more, amounts to a mere legal conclusion

5

that the court is not bound to accept as true."). For instance, the Complaint alleges that Epic "retains employees specifically in this District for the purpose of servicing customers in this District." Compl. ¶ 6. But the statement is not supported and is simply false. Epic in fact has only two employees residing in the Western District of Texas. One employee is only temporarily working remotely from Austin, and the other employee actually works in Verona, Wisconsin and commutes back-and-forth to Austin. Peterson Decl. ¶ 7.[4]

Nothing about either employee's presence in this District suggests Epic maintains a "regular and established place of business" in this District. Epic does not require employees to work from Austin, and the employees may leave Austin at any time without Epic's approval. Peterson Decl. ¶ 8; *see Cray*, 871 F.3d at 1363 ("[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant."). Epic does not condition employment on their continued residence in the District. Peterson Decl. ¶ 8; *Cray*, 871 F.3d at 1363. And Epic does not rent or own physical space for any employee in this District. Peterson Decl. ¶ 7; *see* 871 F.3d at 1365 ("There is no indication that Cray owns, leases, or rents any portion of Mr. Harless's home in the Eastern District of Texas."); *see also Correct Transmission, LLC*, 2021 WL 1967985, at *4 (finding employee home not a regular and established place of business where (1) defendant did not "establish or ratify" the home as his place of work; (2) the employee worked from Austin on his own accord; and (3) defendant did not own or lease any portion of the employee's home).

---

[4] None of the other three Epic employees who live in Texas reside in the Western District of Texas. Peterson Decl. ¶ 9.

6

In short, Plaintiff has failed to establish that venue is proper in this District, and, thus, this case must be dismissed or transferred to the Western District of Wisconsin, where venue is proper.

**B.     Alternatively, This Case Should Be Transferred for Convenience Under Section 1404(a).**

In the alternative, this case should nonetheless be transferred to the Western District of Wisconsin under Section 1404(a). Nothing in this case points to trial in this District: Epic's documents and witnesses are located in Wisconsin; neither party is headquartered or incorporated in this District; and the relevant factors heavily favor transfer.

Section 1404 states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. This statute aims to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted). Indeed, the premise of Section 1404(a) is to prevent abuse through subjecting defendants to inconvenient venues. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). A defendant may successfully move to transfer under Section 1404(a) by showing good cause that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

The first question under Section 1404(a) is whether the case "might have been brought" in the desired transfer venue. *Id.* at 312. As discussed above, venue is proper in the Western District of Wisconsin because Epic resides and maintains its headquarters in the Western District of Wisconsin, so the action might have been brought there.

Next, to determine whether venue transfer is "for the convenience of parties and witnesses and in the interest of justice," courts in the Fifth Circuit consider several private and public interest factors. *Volkswagen*, 545 F.3d at 315. The private interest factors are:

(1) the relative ease of access to sources of proof;
(2) the availability of compulsory process to secure the attendance of witnesses;
(3) the cost of attendance for willing witnesses; and
(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* The public interest factors are:

(1) the administrative difficulties flowing from court congestion;
(2) the local interest in having localized interests decided at home;
(3) the familiarity of the forum with the law that will govern the case; and
(4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* The private and public interest factors weigh in favor of transfer here.

### 1. Private Interest Factors.

The relative ease of access to sources of proof. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citations omitted); *see also Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *3 (W.D. Tex. July 2, 2020) (Albright, J.) ("As Globus Medical is the accused infringer, Globus Medical likely possesses the bulk of the relevant documents for this case.") This factor weighs in favor of transfer because the vast majority of Epic's documents regarding the development and design of its software are located at Epic's

8

Case 6:21-cv-00434-ADA   Document 10   Filed 06/22/21   Page 10 of 15

headquarters in Verona, Wisconsin. Peterson Decl. ¶ 11.[5] Epic is also not aware of any relevant physical evidence located in the Western District of Texas. *Id.*

<u>The availability of compulsory process to secure the attendance of witnesses and the cost of attendance for willing witnesses.</u> This Court has noted that "[t]he convenience of the witnesses is probably the single most important factor in the transfer analysis." *Correct Transmission*, *LLC*, 2021 WL 1967985, at *5. Here, the factors concerning witnesses weigh in favor of transfer because Epic's witnesses are very likely all located in Verona, Wisconsin, and none are located in Texas. Peterson Decl. ¶ 10. Nearly all Epic personnel responsible for the design, development, marketing, and technical support of Epic's software work at Epic's headquarters in Verona and reside in that area, with a very small possibility a witness may be located in Rochester, Minnesota. *Id.* Thus, the cost and disruption to make Epic's witnesses available in the Western District of Texas will be substantially higher than if the case went forward in the Western District of Wisconsin. *See DataQuill, Ltd.*, 2014 WL 2722201, at *4 ("Inconvenience to these witnesses increases as the distance they must travel increases, and traveling to a local court is far more convenient than traveling to Texas.").

No relevant Epic witnesses are located in the Western District of Texas or anywhere else in Texas; the two employees who live in the District have no knowledge relevant to this case. Peterson Decl. ¶ 10. One employee manages internal construction projects at Epic's headquarters, and the other is a Project Manager whose role is to generally support Epic's customers by coordinating software installation at customer sites all over the country, communicating with

---

[5] To the extent many of these documents may be maintained electronically, that would not weigh against transfer. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.,* No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014).

9

customers, and arranging training. *Id.* ¶ 7. Regarding the other three employees who live in Texas, but outside of this District, two are Project Managers and one is an IT manager. *Id.* ¶ 8. None of these employees have knowledge of design and development of Epic's software or matters relevant to this case.

Nor is Epic aware at this time of any relevant third-party witnesses located within the Western District of Texas or anywhere else in Texas. *Id.* Finally, given that Plaintiff is incorporated and headquartered in Florida, (Compl. ¶ 1), and the alleged inventor of the patents-in-suit is apparently located in New York (*see* Exs. A & B)[6], it is unlikely that any witnesses relevant to Plaintiff's case are located in this District.

<u>All other practical problems that make trial of a case easy, expeditious and inexpensive.</u> This factor weighs in favor of transfer due to the convenience for Epic of litigating this case in its home district and the lack of any connection between this District and the Plaintiff or the allegations at issue in this case. *See DataQuill, Ltd.*, 2014 WL 2722201, at *4 ("This is a lawsuit between a foreign plaintiff and a defendant with longstanding and significant ties to the Northern District of California, both generally and specifically with regard to the issues in this case. Most of the witnesses are in California. DataQuill has no presence in Austin. There can be no question it will be more practical to try this case in California than in Texas"); *see also Correct Transmission, LLC*, 2021 WL 1967985, at *5 (finding this factor "favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District"). In addition, the plaintiff's choice of venue cannot be a factor in the transfer analysis, and any judicial economy of having the same judge handle multiple suits on the same patents should not dominate the transfer analysis. *Id.*

---

[6] Exhibits A-C are attached to the Declaration of Nick Saros filed concurrently herewith.

### 2. Public Interest Factors.

<u>The local interest in having localized interests decided at home.</u>  This factor is the most relevant public interest factor here.  It concerns the "significant connections between a particular venue and *the events that gave rise to a suit*," and weighs in favor of transfer if "the accused products were designed, developed, and tested" in the transferee district, or if "the lawsuit 'calls into question the work and reputation of several individuals residing'" in the transferee district.  *In re Apple, Inc.*, 979 F.3d at 1345 (citation omitted); *see also Moskowitz Fam. LLC.*, 2020 WL 4577710, at *6 (noting the "significant interest created by the headquarters of the alleged infringer").  As noted above, the Epic software was designed and developed at the Verona headquarters in the Western District of Wisconsin, and the Epic employees who were involved in the design and development reside there.  This Court has held that "the district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case." *Correct Transmission, LLC*, 2021 WL 1967985, at *5.  Given Epic's principal place of business in Wisconsin, this factor weighs in favor of transfer.

<u>Remaining Factors.</u>  The remaining public interest factors are neutral, or favor transfer.  Both districts are familiar with the uniform body of federal patent law overseen by the Federal Circuit, and there are no conflict of laws or foreign law issues, so those factors are neutral.  With respect to administrative difficulties flowing from court congestion, Epic is not aware of any congestion issues in the Western District of Wisconsin.  Indeed, for cases pending in the last year, the average time to trial in the Western District of Wisconsin was 563 days.  Ex. C.

### V. CONCLUSION

For the foregoing reasons, venue is improper in this District, and this case must therefore be dismissed or transferred to the Western District of Wisconsin.  Alternatively, this case should

nonetheless be transferred to the Western District of Wisconsin under Section 1404(a) for the convenience of the parties and in the interest of justice.

Dated:  June 22, 2021

Respectfully submitted,

*/s/ Richard D. Milvenan*

Richard D. Milvenan
McGINNIS LOCHRIDGE
600 Congress Avenue, Suite 2100
Austin, TX 78701
Tel.:  (512) 495-6005
Fax:  (512) 505-6305
rmilvenan@mcginnislaw.com

Nick G. Saros (*pro hac vice pending*)
Madeline Skitzki (*pro hac vice pending*)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel.:  (213) 239-5100
Fax:  (213) 239-5199
nsaros@jenner.com
mskitzki@jenner.com

*Attorneys for Defendant Epic Systems Corporation*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Rule CV-7(i) movant certifies that counsel for the parties conferred on June 17, 2021, in a good faith attempt to resolve the matter by agreement. The parties did not reach an agreement, and Plaintiff opposes the movant's motion.

*/s/ Richard D. Milvenan*
Richard D. Milvenan

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2021, a true and correct copy of the foregoing response was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Richard D. Milvenan*
Richard D. Milvenan